**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HAKIMAH SHAHID-IKHLAS, | ) | Docket No.: 22-cv-10643 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| -against- | ) | |
| | ) | |
| THE NEW YORK AND PRESBYTERIAN | ) | JURY TRIAL DEMANDED |
| HOSPITAL, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, HAKIMAH SHAHID-IKHLAS ("Plaintiff"), as and for her COMPLAINT against defendant The New York And Presbyterian Hospital, Inc. ("NYP" or "Defendant"), alleges and avers as follows:

**NATURE OF THE ACTION**

1.      This is an action for damages suffered by Plaintiff as a result of NYP's unlawful discrimination against employees who requested reasonable accommodations due to their sincerely held religious beliefs conflicting with NYP's COVID-19 vaccine mandate.

2.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the laws of the State of New York, and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court.

**JURISDICTION**

3.      Jurisdiction of this Court is invoked under the provisions of 42 U.S.C. §

2000e.   The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and pendent

jurisdiction thereto.

4.      The Court has supplemental jurisdiction under the State law causes of action

asserted herein.

5.       On April 28, 2022, Plaintiff filed a charge of employment discrimination

with the U.S. Equal Employment Opportunity Commission (EEOC).

6.      On or about September 17, 2022, Plaintiff received a Right to Sue Letter

from the EEOC.

7.      Plaintiff has satisfied all administrative prerequisites and has filed this case

within ninety days of receiving the Right to Sue Letter.

**VENUE**

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b)(2) since the events giving rise to Plaintiff's claim occurred in New York County,

and New York County is within the jurisdiction of the Southern District of New York.

**PARTIES**

9.      Plaintiff is a Certified Critical Care Registered Nurse who was employed

by Defendant at Weill Cornell Medical Center, located at 525 East 68th Street, New York,

New York, as a staff nurse for the Critical Care - Coronary Care Unit from June 16, 2014

to November 30, 2021.

10.      Upon information and belief, Defendant The New York And Presbyterian

Hospital, Inc. is a domestic not-for-profit corporation organized and existing under and by

virtue of the laws of the State of New York with its principal offices located at 525 East 68th Street, Box 88, New York, New York 10065.

11. In or about June 11, 2021 NYP announced a new COVID-19 policy to its employees which included, among other things, dates by which employees were required to undergo vaccination to maintain their employment with NYP, as well as the process by which an employee may apply for a religious or medical exemption.

12. The deadline by which employees seeking an exemption were required to submit their requests was initially August 1, 2021. This date was extended to August 6, 2021.

13. **NYP disseminated, via email, instructions to its nursing staff, including Plaintiff, on how to go about applying for an exemption.**

14. On August 6, 2021, Plaintiff submitted a written request for religious exemption under the NYP COVID-19 Vaccination Program.

15. Plaintiff's request cited "genuine and sincere personal religious beliefs which are predicated on the understanding that all life is sacred" and "the use of fetal cell lines in the development and testing is a direct contradiction of this belief." Plaintiff further stated, "Despite the fact that current fetal cell lines are many generations removed from the original aborted fetal tissue, the fact remains, and is not debatable, that the fetal tissue was electively aborted." Plaintiff affirmed "acceptance of these vaccines endorses and promotes abortion" and cited the Muslim Holy Book, the Qur'an, stating, "...do not kill your children for fear of want: We shall provide sustenance for them as well as for you. Verily the killing of them is a great sin. (Chapter 17 Verse 31)."

16.     Plaintiff cited additional religious authority to support her position which was derived from traditions and sayings of Islam's Prophet, Muhammad Ibn Abdullah, wherein he is quoted as having said, "Allah has sent the illness and the cure, and He has made a cure for every illness, so seek medical treatment, but do not treat with anything prohibited (ḥarām)."

17.     Plaintiff's request concluded stating that receiving any of the vaccines would render Plaintiff "complicit with the abomination," but also affirmed that Plaintiff was "not against receiving vaccines, in general," and "would be willing to take a COVID19 vaccine that was created using permissible means."

18.     On August 26, 2021, the New York State Department of Health (NYS DOH) issued an emergency regulation requiring that certain health care providers ensure that their employees receive a COVID-19 vaccine by September 27, 2021 (*See* 10 N.Y.C.R.R. § 2.61).   This regulation, allowed for medical exemption, but excluded religious exemptions.

19.     However, on or about September 14, 2021, a temporary restraining order was granted barring the DOH from enforcing its mandate requiring employers to deny religious exemptions to the COVID-19 vaccine.  (*See Dr. A. v. Hochul*, No. 21-cv-1009, 2021 U.S. Dist. LEXIS 199419, 2021 WL 4734404 (N.D.N.Y. October 12, 2021)).

20.     On September 15, 2021, Plaintiff was notified by NYP via email that NYP was putting a hold on its enforcement of any mandatory COVID-19 vaccination policies. Approximately two weeks later, on October 1, 2021, Plaintiff was notified by NYP via email that Plaintiff's request for religious exemption was approved.

21.     On October 21, 2021, Plaintiff was further notified by NYP via email that Plaintiff would need to undergo weekly COVID-19 tests beginning the week of 10/25/21.

22.     On October 29, 2021, the U.S. Court of Appeals for the Second Circuit issued an Order vacating the aforementioned preliminary injunction that had temporarily blocked the NYS DOH from enforcing its regulation requiring most healthcare workers to be vaccinated against COVID-19 without an option for a religious exemption.  The Court issued its full opinion on November 4, 2021 (*See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021)).

23.     The Court opined, however, that NY State "observes that "[n]othing in [ Section 2.61] precludes employers from accommodating religious objectors by giving them ... assignments—such as telemedicine—where they would not pose a risk of infection to other personnel, patients, or residents." *See, id.* at 291.

24.     The Court went on to say that "Section 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule. Section 2.61 does not require employers to violate Title VII because, although it bars an employer from granting a religious exemption from the vaccination requirement, it does not prevent employees from seeking a religious accommodation allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement." *See id.* at 291.

25.     On November 17, 2021, Plaintiff was notified by NYP via email from Notify NYP that New York State's vaccine mandate no longer permits religious exemptions and that vaccination was now required. The email further stated that all covered staff must receive their first dose of the vaccine by November 22, 2021. **The email did not**

**provide any instruction or direction on how to request a reasonable accommodation, which, as stated above, was not barred by the aforementioned order.**

26.     On November 22, 2021, Plaintiff received an email from NYP which, in a unilateral effort to discourage NYP staff from asserting their right to request a reasonable accommodation, stated **indiscriminately to, among others, all nursing staff, without regard to their individual talents or qualifications to work elsewhere in the organization** (the "Pre-emptive Email"):

> "We have proactively reviewed your position to evaluate whether there was any reasonable accommodation that we could offer. Unfortunately, given the nature of your role, the State's latest vaccination mandate **precludes us from allowing you to continue _in your role_** even with weekly testing and masking. Because _**your job**_ **requires your presence in the Hospital** interacting with patients or staff, **there is no accommodation the State would permit that would not create an undue hardship**." The email further warned that "any employees who do not come into compliance by 11/29/21 will be deemed to have opted to resign for not having met a condition of employment."

27.     This email was the first mention of an "accommodation" following NYP's announcement of the Second Circuit's decision to lift the restraining orders which had prevented the enforcement of NYSDOH vaccine mandates, but, rather than instruct staff on how to apply for an accommodation, NYP pre-emptively and unlawfully dispensed with its obligation to offer any reasonable accommodation to plaintiff.

28.     In its Pre-emptive Email, NYP intentionally conflated the procedures put in place for religious *exemption* with its obligation to present an *accommodation* to Plaintiff which, depending on the circumstances and positions available, may not have involved Plaintiff working in her (then) "**role**" being present "**in the Hospital**."

29.     In fact, since May 2020, one of Plaintiff's roles was to interview candidates for staff positions. These interviews were conducted virtually via NYP designated Zoom. Additionally, in the past, staff members in similar roles as Plaintiff, who requested job accommodations, were given opportunities to perform other tasks that did not require them to interact in-person with patients or staff, such as making discharge calls to former patients and performing patient chart reviews.

30.     If NYP did not unlawfully dispense with its obligation to engage Plaintiff concerning a possible accommodation, a suitable option could have been arrived at based on the above.

31.     In response to the Pre-emptive Email and in the absence of any clear instructions from NYP, Counsel submitted a letter of representation and request for an accommodation on Plaintiff's behalf on November 22, 2022 to Plaintiff's supervisor, Ashley Dorfman, Patient Care Director as per NYP's Human Resources Policy and Procedures Manual, Number 520.

32.     On November 23, 2021, Plaintiff received a text message on her non-work, personal cell phone from supervisor Ashley Dorfman, stating, "can you please give me a call today?  It's important.  Thank you."

33.     There was no accompanying email or any indication that the call was regarding Plaintiff's request for religious accommodation. In fact, every indication was that the communication from Dorfman had nothing at all to do with Plaintiff's request for religious accommodation, as Plaintiff had received a similar, vague text message from Supervisor Ashley Dorman on November 19, 2021, which was prior to the Pre-emptive Email from NYP.

34.     Ashley Dorfman resigned the next day, November 24, 2021.

35.     On November 28, 2021, Plaintiff worked overnight at NYPH/WC as per usual.

36.     On December 1, 2021, Plaintiff was not able to log into her NYPH work email nor access her work schedule.

37.     Counsel forwarded, via email, Plaintiff's prior request for accommodation to the interim Supervisor, Kevin Fougere, and the Director of Nursing, Cardiac Services and Amenities, Christa Kleinschmidt.  This letter advised that neither Counsel, nor Plaintiff received any response to Plaintiff's accommodation request, dated November 22, 2021, and that it appeared that Plaintiff suffered an adverse employment action.

38.     The letter further stated, "Please advise if NYP has terminated Ms. Shahid-Ikhlas without engaging in any dialogue in connection with her November 22, 2021 request (see below and attached) for religious accommodation."

39.     Plaintiff subsequently received an email from WC HR Vax Questions advising that NYP deemed Plaintiff to have resigned from employment at NYP effective November 30, 2021 due to being "non-compliant" with the NYP COVID-19 Vaccination Program. There was no mention of Plaintiff's request for religious accommodation.

40.     Counsel forwarded Plaintiff's November 22, 2021 request via email to WCHRVaxquestions@nyp.org and advised that Plaintiff had NOT resigned. Rather, Plaintiff had requested religious accommodation while still an active employee of NYPH and was still awaiting a response, as required by law.

41.     On December 3, 2021, Counsel received an email from Alexander Gallin, Associate General Counsel, acknowledging the belated receipt of the letter dated 11/22/21

regarding Plaintiff's request for a religious accommodation. The letter stated that the assertion that Plaintiff was terminated without engaging in any dialogue is inaccurate. It goes on to state, "After repeated attempts by her supervisor to contact her, on November 22, Ms. Shahid-Ikhlas was informed in writing that NYP, after reviewing Ms. Shahid-Ikhlas' specific job position and duties, determined that it could not provide an accommodation to her absent an undue hardship.  Specifically, we explained that "given the nature of [Ms. Shahid-Ikhlas'] role, the State's latest vaccination mandate precludes us from allowing [her] to continue in [her] role even with weekly testing and masking because [her] job requires [her] presence in the Hospital interacting with patients or staff."

42.     Mr. Gallin's letter clearly insinuates that Ms. Dorfman's November 23, 2022 text message to Plaintiff's non-work personal cell phone was both an appropriate means of communication for such matters and that said communication was made to inform Plaintiff of NYP's decision concerning her request for accommodation—as though such a determination would have conceivably been issued the same day of Plaintiff's request, from her immediate supervisor, with no input from NYP's legal department.

43.     This was clearly an opportunistic attempt on the part of Mr. Gallin to use the fortuitous timing of Ms. Dorfman's text message to make NYP appear compliant with **NYP's obligation to meaningfully consider Plaintiff's most recent request for an accommodation, given the obvious change in circumstances since Plaintiff's initial request**.

44.     On April 28, 2022, Plaintiff filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).

45.     By letter dated September 17, 2022, EEOC issued a right to sue notice to Plaintiff under EEOC Charge No. 520-2022-02341.

## COUNT I – DISCRIMINATION UNDER TITLE VII

46.     Plaintiff hereby asserts and realleges each and every allegation in paragraphs 1 - 45 as if fully set forth herein.

47.     Title VII of the Civil Rights Act of 1964 prohibits NYP from discriminating against its employees on the basis of their sincerely held religious beliefs.  *See* 42 U.S.C. § 2000e-2(a).

48.     Plaintiff holds sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

49.     Plaintiff informed NYP of those beliefs that preclude her from receiving a COVID-19 vaccine.

50.     Plaintiff informed NYP of those beliefs and requested a reasonable accommodation in light of the vaccine mandate.

51.     NYP unlawfully discouraged Plaintiff from asserting her right to a reasonable accommodation by, not only providing no instructions or procedure for doing so, but, instead, pre-emptively declaring that Plaintiff's exercise of her right to a reasonable accommodation based upon her sincerely held religious beliefs would be futile.

52.     NYP failed to provide Plaintiff with a reasonable accommodation, thereby discriminating against Plaintiff because of her religious beliefs.

53.     NYP's failure to provide a reasonable accommodation to Plaintiff has harmed and will continue to harm Plaintiff.

54.     By affirmatively misleading Plaintiff by way of NYP's willful and calculated effort to have Plaintiff (and NYP's entire nursing staff) forego the assertion of her right to be considered for a reasonable accommodation, NYP's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II – DISCRIMINATION UNDER NEW YORK STATE LAW

55.     Plaintiff hereby asserts and realleges each and every allegation in paragraphs 1 - 54 as if fully set forth herein.

56.     New York State Executive Law § 296(1) provides that "[i]t shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

57.     Defendant violated the section cited herein by disregarding entirely Plaintiff's request for a reasonable accommodation and otherwise refusing to offer Plaintiff a reasonable accommodation and discharging, creating and maintaining discriminatory working conditions and otherwise discriminating against the Plaintiff on the basis of her religion (creed).

58.     Plaintiff hereby makes claim against Defendant under all of the applicable paragraphs of New York State Executive Law Section 296.

59.     Defendant violated the aforementioned New York State Human Rights Law and Plaintiff suffered numerous damages as a result.

### COUNT III – DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE

60.     Plaintiff hereby asserts and realleges each and every allegation in paragraphs 1 - 59 as if fully set forth herein.

61.     The Administrative Code of the City of New York § 8-107 provides that "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, or marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person…[t]o represent that any employment or position is not available when in fact it is available…[t]o refuse to hire or employ or to bar or to discharge from employment such person…or [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."

62.     Defendant violated the code sections cited herein by disregarding entirely Plaintiff's request for a reasonable accommodation and otherwise refusing to offer Plaintiff a reasonable accommodation and discharging, creating and maintaining discriminatory working conditions and otherwise discriminating against the Plaintiff on the basis of her religion (creed).

63.     Plaintiff hereby makes claim against Defendant under all of the applicable paragraphs of the Administrative Code of the City of NY Section 8-107.

64.     Defendant violated the aforementioned section of the Administrative Code

of the City of New York and Plaintiff suffered numerous damages as a result.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against the Defendant in

an amount to be determined at trial for all emotional distress, lost wages, back and front

pay, cost of alternative health insurance, liquidated and statutory damages, attorneys fees,

costs and awarding Plaintiff such other and further relief as the Court deems equitable, just

and proper to remedy the Defendant's unlawful employment practices.


Dated:  Brooklyn, New York
        December 16, 2022

                        **DAVIS, NDANUSA, IKHLAS & SALEEM, LLP**
                        *Attorneys for Plaintiff*

                        By:  /s/ Muhammad Ikhlas
                        Muhammad Ikhlas, Esq. (MI 2274)
                        26 Court Street, Suite 603
                        New York, N.Y. 11242
                        (718) 783-6819
                        mikhlas@icloud.com

13